632 A.2d 1183

**Kim Milo LEE**

v.

**STATE of Maryland.**

**No. 24, Sept. Term, 1993.**

Court of Appeals of Maryland.

Nov. 16, 1993.

Gary S. Offutt, Asst. Public Defender, argued (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

At a jury trial conducted on December 18, 1991, Kim Milo Lee, the petitioner, was convicted in the Circuit Court for Dorchester County of possession of cocaine and possession

with intent to use drug paraphernalia in violation of Maryland Code (1957, 1989 Repl.Vol.), Article 27, §§ 287 and 287A, respectively. Because he had been previously convicted of possession of cocaine in 1989, the court sentenced him on December 18, 1991, to eight years imprisonment, suspending the last two years of that term and placing the petitioner on probation for three years.[1] The court imposed a $300 fine on the paraphernalia conviction.

The Court of Special Appeals affirmed those judgments in an unreported opinion. We granted Lee's petition for certiorari on the issue of whether the State complied with the notice requirement of Maryland Rule 4–245(b) in seeking enhanced punishment of Lee for his second conviction of possession of cocaine.

## I.

On May 6, 1991, Kim Milo Lee was arrested in Cambridge, Maryland and charged with possession of cocaine and possession with intent to use drug paraphernalia in violation of Md.Code (1957, 1989 Repl.Vol.), Article 27, §§ 287 and 287A, respectively. On March 16, 1989, Lee had been previously convicted of possession of cocaine and possession of paraphernalia in violation of the same statutes.

On December 3, 1991, the State's Attorney for Dorchester County mailed to Lee's attorney a "Notice of Enhanced Penalty" stating that, pursuant to Article 27, § 293, upon conviction of a crime relating to controlled dangerous substances, the State would request the court to sentence the Defendant as a subsequent offender subject to punishment by a term of imprisonment twice that otherwise authorized, by twice the

---

1. Possession of cocaine is punishable by imprisonment for not more "than four years, a fine of not more than twenty-five thousand dollars ($25,000), or both." Art. 27, § 287(e). Article 27, § 293(a) further provides:

"(a) Any person convicted of any offense under this subheading is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that otherwise authorized, by twice the fine otherwise authorized, or by both."

fine otherwise authorized, or both. A copy of the notice was filed with the clerk of the court by the prosecutor on December 4, 1991. A jury trial commenced and was concluded on December 18, 1991, resulting in Lee's conviction of both possession of cocaine and possession with intent to use drug paraphernalia. Later that day, the court proceeded with sentencing. The prosecutor presented certified copies of Lee's 1989 conviction for possession of cocaine and possession of drug paraphernalia and asked the court to impose the maximum penalty of eight years for possession of cocaine as a *subsequent offender*. The court sentenced Lee to imprisonment for eight years for the possession of cocaine, but suspended the last two years of the term and placed him on probation for three years upon release from incarceration. The court then imposed a fine of $300.00 for the possession of paraphernalia conviction.

Lee appealed to the Court of Special Appeals, claiming that he was illegally sentenced as a recidivist pursuant to Article 27, § 293. Lee asserted that there was no evidence that the State had notified him of its intent to seek an enhanced sentence, or that he had received any such notice. The Court of Special Appeals affirmed those judgments in an unreported opinion. The intermediate appellate court recited Maryland Rule 4–245(b) and noted that its purpose is "to give a criminal defendant an opportunity to make a realistic assessment of the charges against him, and an opportunity to prepare and conduct his defense knowing what his sentence may be if convicted." Slip op. at 4. The court noted that the State mailed its notice of enhanced sentence on December 3, 1991 and Lee was tried on December 18, 1991. The court held that "[i]nasmuch as mailing is tantamount to service, Rule 4–245(b) was complied with." Slip op. at 4.

## II.

Md. Rule 4–245(b) provides:

"(b) **Required Notice of Additional Penalties.**—When the law permits but does not mandate additional penalties be-

cause of a specified previous conviction, the court shall not sentence the defendant as a subsequent offender unless the State's Attorney serves notice of the alleged prior conviction on the defendant or counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial in circuit court or five days before trial in District Court, whichever is earlier."

Md. Rule 1–321(a) provides:

"(a) **Generally.**—Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties. If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address. Delivery of a copy within this Rule means: handing it to the attorney or to the party; or leaving it at the office of the person to be served with an individual in charge; or, if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of that person with some individual of suitable age and discretion who is residing there. *Service by mail is complete upon mailing.*" (Emphasis added).

In construing these rules we apply the same principles of construction employed in interpreting statutes. *New Jersey v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993); *Hartless v. State,* 327 Md. 558, 563, 611 A.2d 581, 583 (1992); *In re Leslie M.,* 305 Md. 477, 481, 505 A.2d 504, 507 (1986); *Papas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549, 553 (1980). We thus look to the plain meaning of the language employed in these rules and construe that language without forced or subtle interpretations designed to limit or extend its scope. *Hartless,* 327 Md. at 563, 611 A.2d at 583; *Baltimore Sun v.*

*University,* 321 Md. 659, 669, 584 A.2d 683, 688 (1991); *State v. Intercontinental, Ltd.,* 302 Md. 132, 137, 486 A.2d 174, 176 (1985).

Reading these two rules together, and interpreting them according to their plain meaning, we hold that a subsequent offender notice that is mailed to counsel for the defendant 15 days before a Circuit Court trial or five days before a District Court trial will satisfy both Rule 4–245 and the due process requirements of notice and opportunity to be heard before being sentenced as a recidivist. Accordingly, for the reasons hereinafter set forth, we shall affirm the judgment of the Court of Special Appeals.

## A.

Subsequent offender statutes have existed in this country and in England for centuries. *Graham v. West Virginia,* 224 U.S. 616, 623, 32 S.Ct. 583, 585, 56 L.Ed. 917, 921 (1912). The propriety of imposing more severe punishments on subsequent offenders is no longer open to serious constitutional challenge. *Oyler v. Boles,* 368 U.S. 448, 451, 82 S.Ct. 501, 503, 7 L.Ed.2d 446, 450 (1962); *Graham v. West Virginia, supra; Moore v. Missouri,* 159 U.S. 673, 676, 16 S.Ct. 179, 181, 40 L.Ed. 301, 303 (1895); *Loveday v. State,* 296 Md. 226, 237–38, 462 A.2d 58, 63 (1983). A key due process safeguard to the imposition of enhanced punishment for recidivists is that prior to being sentenced as such, the defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge. *Oyler,* 368 U.S. at 452, 82 S.Ct. at 504, 7 L.Ed.2d at 450 (1962). This due process requirement, however, does not necessitate that notice be given prior to the trial on the substantive offense. *Id.* So long as the notice is received within a reasonable time prior to sentencing, due process has been ensured. Some states, however, including Maryland, have gone further by requiring notice prior to the

trial on the substantive offense.[2] It is in this tradition that Md. Rule 4–245 has evolved.

### B.

In *King v. State*, 300 Md. 218, 477 A.2d 768 (1984), we made a comprehensive review of the history of former Md. Rule 734, the predecessor to present Md. Rule 4–245. We will summarize what was said there.

The early practice in Maryland for imposing enhanced punishment did not involve issuance of subsequent offender notices. Rather, the prosecutor had to aver the prior conviction in the indictment for the current offense. This was required because it was thought that the indictment had to contain an averment of every fact essential to justify the punishment inflicted. Under this practice, the finder of fact at the guilt-innocence stage of the trial had to be convinced of the historical fact of the prior conviction. The prior conviction was proven by production of the record of the prior charge and by proof that the same person committed both the prior and current offenses. Thus, through the indictment, the accused was put on notice early that as a subsequent offender he was subject to increased punishment if convicted of the current offense.

This Court first recognized the validity of imposing increased sanctions for repeat offenders in *Maguire v. State*, 47 Md. 485 (1878). In that case the defendant was charged with three counts of liquor law violations. Each count was alleged

---

2. Federal statutes also require notice of enhanced penalty prior to trial or acceptance of a guilty plea. *See, e.g.,* 21 U.S.C. § 851(a)(1) (1981), which provides:

"No person who stands convicted of an offense under [the Drug Abuse Prevention Act] shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

*See United States v. Jordan,* 810 F.2d 262, 268–69 (D.C.Cir.), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987).

to have been the defendant's second such offense. In his opening statement, the prosecutor read to the jury the indictment containing the allegations of prior convictions. We upheld this procedure whereby the fact of prior conviction was averred in the indictment for the current offense, reasoning that the "indictment must contain an averment of every fact essential to justify the punishment inflicted." 47 Md. at 496.

Subsequent to the decision in *Maguire*, we continued to recognize the necessity of including in the indictment for a current offense an averment alleging a prior conviction, as well as having the jury determine that the defendant was in fact convicted of that prior offense. *King v. State*, 300 Md. at 226, 477 A.2d at 772. The purpose of alleging a prior conviction in the indictment was to inform a defendant of the accusation against him with sufficient particularity in order to enable him to prepare adequately for his defense. *Id.*

These procedures requiring the averment of prior conviction in the indictment and requiring the jury to establish the historical fact of prior conviction were questioned by this Court in *Beard v. State*, 216 Md. 302, 140 A.2d 672, *cert. denied*, 358 U.S. 846, 79 S.Ct. 72, 3 L.Ed.2d 81 (1958). The majority of the Court in that case held that the indictment charging the current offense and alleging the historical fact of one or more prior offenses was valid. Nevertheless, the Court also added:

"We find no constitutional requirement that an indictment allege a prior conviction or convictions in any particular manner or in any particular place, so long as any such prior offenses are clearly stated as the basis for increased punishment if the accused is convicted of the current offense charged against him. Neither do we find any constitutional requirement that the jury must pass on the accused's alleged prior convictions at the same time that it passes upon the alleged current offense."

216 Md. at 320, 140 A.2d at 682–83. At the conclusion of the Court's opinion, Chief Judge Brune suggested that this Court's Standing Committee on Rules of Practice and Proce-

dure consider adopting a change in the *Maguire* rule, given that neither a particular form of indictment alleging a prior conviction nor the practice of having the jury pass on the accused's former convictions was constitutionally required. *Id.*

In response to that suggestion, the Rules Committee proposed former Md. Rule 713. Under that rule, which this Court adopted effective January 1, 1962, the prosecutor was no longer required to aver the prior conviction in the indictment, but instead was required to attach an addendum to the indictment. The addendum informed the defendant that: the State had evidence of the prior convictions, the State intended to prosecute the accused as a subsequent offender, the maximum punishment may be imposed upon conviction, and the issue of whether he had in fact been convicted of the prior offense could be tried concurrently with the current offense or determined by the court or jury after the verdict on the current offense. *King*, 300 Md. at 228, 477 A.2d at 773. Although Rule 713 altered the procedure, the existence of the prior conviction continued to be a triable issue determined by the court or jury. *Id.*

The promulgation and adoption of former Md. Rule 734 in 1976 discontinued the practice of informing an accused through the indictment that the State intended to seek enhanced punishment based on a former conviction. Under this new rule, the state's attorney had to serve notice on the defendant or his attorney of the State's intention to seek increased punishment prior to the acceptance of a plea of guilty or nolo contendere or at least 15 days prior to trial. The rule further provided that the allegation that the defendant was a subsequent offender was not an issue in the trial upon the charging document and could not be disclosed to the trier of fact without the consent of the defendant. Former Md. Rule 734 d. That rule also stated: "Before sentencing and after giving the defendant an opportunity to be heard, the court shall determine whether the defendant is a subsequent offender as specified in the notice of the State's Attorney." Former Md. Rule 734 e. Hence developed our current prac-

tice of serving the defendant with a notice that he is a subsequent offender subject to enhanced punishment.

In 1984, many of the Maryland Rules were revised and renumbered, and former Md. Rule 734 became current Md. Rule 4–245 with only minor modifications.

## C.

Our present Rule 1–321 derives from former Md. Rule 306. Like Md. Rule 1–321, former Md. Rule 306 required service of every pleading and other paper filed after the original pleading upon the party or his attorney, but if a party was represented by an attorney, the service had to be made on the attorney. Like Md. Rule 1–321, service could be made by hand delivery or by mail. Former Md. Rule 306 differed, however, in that if the pleading or other paper was mailed, instead of deeming service complete upon mailing, former Md. Rule 306(c)(3) established a presumption of service one day after the day of mailing, if in the same city or county, and one day additional for each 500 miles or fraction thereof between the place of mailing and the place of address.

When the Rules Committee proposed Md. Rule 1–321, it replaced the presumption of service with the provision that: "Service by mail is complete upon mailing." [3] The Rules Committee made this change in order to model the rule after Federal Rule of Civil Procedure 5.[4] Maryland Rule 1–321 was

---

**3.** This provision of Rule 1–321(a) has been referred to by the parties as the "mailbox rule." We will refer to the provision as such. The mailbox rule, also called the "postal acceptance rule", is a principle of the common law of contracts that basically provides that acceptance by mail of an offer is ordinarily effective upon depositing that acceptance in the mailbox. *Reserve Insurance Co. v. Duckett*, 249 Md. 108, 117, 238 A.2d 536, 541 (1968); *Wheat v. Cross*, 31 Md. 99, 103 (1869). *See also*, 5 L. McLain, *Maryland Evidence* § 301.3 n. 61, at 219 (1987).

**4.** *See* Minutes of Rules Committee Meeting, October 13–14, 1978, where it was decided that because the Federal Rules "key off the time of mailing," this should be the basis of the reorganization rules.

"Mr. Niemeyer then noted that the rule most affected by this change was Rule 1–321 (Service of Pleadings and Papers Other Than

adopted in 1984, the year in which many of the Maryland Rules were revised and renumbered. Maryland Rule 4–245 was also adopted at that time.

## III.

We reject Lee's multi-faceted argument that the 15–day notice requirement of Md. Rule 4–245(b) should be measured from the date on which he received notice. Lee argues that: (1) the purpose of Rule 4–245(b) is to insure that notice is received 15 days prior to trial; (2) applying the mailbox rule in these circumstances is incompatible with due process; (3) Md. Rule 1–321 is only applicable where service is contemporaneous with filing; (4) Rule 1–321 is inapplicable because Rule 1–321 requires service on the attorney and Rule 4–245 permits service on the defendant or counsel in the alternative; and (5) the mailbox rule should not apply to criminal cases. We address these arguments *seriatim.*

■ Lee first argues that Rule 4–245(b) not only requires that notice be given, but that it be *received* at least 15 days before trial. This, however, is expressly not required by Md. Rules 1–321 and 4–245(b). The latter rule mandates that the state's attorney *serve* notice at least 15 days prior to trial. This rule, combined with the provision of Rule 1–321 that service is complete upon mailing, makes it clear that service of the enhanced punishment notice must be either hand-delivered 15 days prior to trial or mailed 15 days prior to trial. What Rule 4–245(b) does not require is *receipt* of the notice 15 days prior to trial. Lee would have us hold that in order to satisfy

---

Original Pleadings). As a result the Committee turned its attention to Rule 1–321.

Judge Ross then explained the Subcommittee's approach to the rule and that the Subcommittee recommends that the rule use a filing requirement as the key as opposed to the Federal requirement of service as the key.

Mr. Brault suggested in order to make time key off of mailing there be added to the end of section (a) (Generally) the following:

'Service by mail is complete upon mailing.'

Mr. Brault's suggestion was accepted."

Rule 4–245, the 15–day period must be measured from the date the notice is actually received. Yet Rule 4–245(b) explicitly requires that *service*, not receipt, of notice be at least 15 days before trial. This, in conjunction with the provision of Rule 1–321(a) that service by mail is complete upon mailing, provides a specific date by which to measure the State's compliance.

Lee next asserts that "[m]aking mailing tantamount to service defeats the rule's obvious purpose of not merely ensuring that notice is given, but ensuring that adequate notice is provided." Application of the mailbox rule is not inconsistent with this purpose. Insuring that adequate notice is provided does not necessarily require that the defendant actually receive notice 15 days prior to trial. So long as notice is *served* 15 days prior to trial, adequate notice under the rule has been provided and the purpose of the rule has been satisfied. In *Carter v. State*, 319 Md. 618, 622–23, 574 A.2d 305, 307 (1990), we observed that the purpose of Rule 4–245(b) is to give a criminal defendant an opportunity to make a realistic assessment of the charges against him, and an opportunity to conduct his defense knowing what his sentence may be if convicted. This purpose is not compromised in any significant way if the 15–day period is cut short by one or two days while the notice travels through the postal system.

If the drafters of the rules had wanted to guarantee that the defendant actually received a copy of the notice 15 days before trial, they would not have used the words "serves notice" in Rule 4–245. Rather, the rule would have required personal service, certified mail, or some other means of both assuring actual receipt by the defendant and defining a point from which to measure time. *Cf.* Md. Rule 4–212(g) (requiring the officer who serves the defendant with the summons or warrant and the charging document to make a prompt return of service to the court that shows the date, time, and place of service); Md. Rule 4–502(*l*) (providing that service with respect to application or petition for expungement "means mail-

ing a copy by certified mail [5] or delivering it to any person admitting service"). Another way the drafters could have assured actual receipt of notice 15 days before trial would be, instead of using the words "serves notice," using the word "notify" or "notified." For example, Md.Code (1957, 1992 Repl.Vol.), Article 27, § 412(b) requires a sentence of life imprisonment unless "the State notified the person in writing at least 30 days prior to trial" that it intended to seek a sentence of death or life imprisonment without parole.

Applying the mailbox rule to Rule 4–245 is consistent with that rule's purpose. The purpose of Rule 4–245(b) is "to inform a defendant fully of the nature of the State's case against him in order that he may intelligently conduct his defense." *King v. State*, 300 Md. at 231, 477 A.2d at 775. Indeed, other states have upheld as sufficiently fulfilling their purposes, habitual offender notice procedures which provide far less protection than that afforded Lee in the instant case.[6]

■ Lee also contends that making mailing tantamount to service is incompatible with the due process principles requiring notice before a person can be subject to enhanced criminal penalties. His argument on this point is without merit.

The Fourteenth Amendment does not require that a defendant be notified of the State's intention to seek enhanced

---

5. Md. Rule 1–202(d) defines "certified mail" to mean "mail deposited with the United States Postal Service, with postage prepaid and return receipt requested."

6. *See, e.g., State v. Schilz,* 37 Or.App. 275, 587 P.2d 100 (1978) (Where notice requirements that were in effect when Motor Vehicles Division mailed letter warning defendant of habitual traffic offender proceeding required mailing by certified mail, return receipt requested, and permitted receipt by anyone in the addressee's household, warning letter that was so mailed and was received and signed for by defendant's wife was properly served on defendant even though the warning letter was not mailed "addressee only" and even though defendant, who was separated from his wife and living elsewhere, never was told about the letter and never received it personally); *Holsclaw v. State,* 406 So.2d 1019 (Ala.Cr.App.1981) (Defendant had sufficient written notice of prior convictions upon which State would proceed in habitual felony offender hearing when State served notice on date of conviction, nine days prior to sentencing hearing).

penalties prior to the trial for the substantive offense. *Oyler v. Boles,* 368 U.S. at 452, 82 S.Ct. at 504, 7 L.Ed.2d at 450. What is required as a matter of due process is that a defendant receive reasonable notice and an opportunity to be heard prior to being sentenced as a subsequent offender. Inasmuch as Rule 4–245(b) requires notice of the State's intent to seek enhanced penalties before the trial on the substantive offense, the defendant is provided a procedural benefit in excess of what due process requires.[7]

Lee offers this example of how our ruling would violate due process:

"if 'mailing is tantamount to service,' then there has been compliance with the rule even if the notice is not delivered until after sentencing. Not only is a construction of the rule that would permit such a result inconsistent with the purpose of the rule, it is incompatible with the due process principles requiring notice before a person can be subject to any state action, much less enhanced criminal punishment."

Petitioner's Brief at 4–5. Indeed, such a situation would present due process problems, but these are not the facts of the instant case. We do not address today the situation where the notice is mailed but not received, or where the notice is not received a reasonable time before sentencing. *See* 5 L. McLain, *Maryland Evidence* § 301.3 n. 61, at 219 (1987). We also do not address the situation where the notice is mailed to a pro se defendant, or to the defendant himself when represented by counsel.[8]

What we do hold is that when the Notice of Enhanced Penalty is mailed by the state's attorney to the defendant first

---

**7.** *Cf. Horsman v. State,* 82 Md.App. 99, 570 A.2d 354, *cert. denied,* 321 Md. 225, 582 A.2d 531 (1990) (where State informed defendant that it would pursue the mandatory sentence under Md.Code Ann., Art. 27, § 643B and complied with the notice requirements of Rule 4–245(c), the fact that defendant was not given notice prior to his trial was not a denial of due process).

**8.** This can be particularly problematic when the defendant is incarcerated.

class mail, postage prepaid, such that it is received a reasonable time prior to sentencing, due process has been provided. Where, as here, the defendant is represented by counsel, and there is no contention that the notice was not received, the notice requirement of Rule 4–245(b) satisfies due process. Since there has been no contention by Lee that the notice sent to his counsel did not give him a reasonable period of time to prepare for his sentencing hearing, we do not address the issue of whether the particular notice sent to him violated due process.

■ Lee also argues that Rule 1–321(a) does not apply to Rule 4–245 because the former was designed for the situation where service and filing are virtually contemporaneous and does not apply to the situation where filing is literally prohibited at the time of service. Lee's argument derives from the language of two parts of Rule 1–321(a):

"every pleading and other paper filed after the original pleading shall be served upon each of the parties," and

"[s]ervice by mail is complete upon mailing."

He thus combines the two clauses and reasons that " 'service is complete upon mailing' for 'every pleading and other paper filed after the original pleading.' "

Lee claims that this language is inapplicable to the filing of an enhanced penalty notice because filing under Rule 4–245(d) can only occur after the acceptance of a plea of guilty or nolo contendere or after conviction at trial. He claims that the mailbox rule does not apply to situations like that in Rule 4–245 where filing is "literally prohibited at the time of service."

Rule 4–245(d) reads:

"(d) **Disclosure of the Notice.**—*After acceptance of a plea of guilty or nolo contendere or after conviction, a copy of the notice shall by filed with the clerk and presented to the court.* The allegation that the defendant is a subsequent offender is not an issue in the trial on the charging document and may not be disclosed to the trier of fact without the consent of the defendant, except as permitted in this Rule. Nothing herein shall prohibit the use of any prior

conviction for impeachment purposes, if the evidence is otherwise admissible." (Emphasis added).

When the emphasized sentence of this rule is read in context with its second sentence, it would appear that the drafters of the rule intended that no indication of the defendant's prior conviction should appear in the court's file in the event that the defendant might elect a bench trial for the substantive offense.[9] We need not, under the facts of the instant case, reach that question since Lee does not contend that the enhanced penalty notice which was filed prior to trial was brought to the attention of the jury which convicted him.

Even if we were to interpret Rule 4–245(d) to prohibit early filing of the enhanced penalty notice prior to acceptance of a plea of guilty or nolo contendere or conviction, this does not alter the means of service permissible under Rule 1–321(a). There is nothing in Rule 1–321 which restricts the mailbox rule to situations where filing and service are contemporaneous. Rule 1–321 falls under the General Provisions Title of the Maryland Rules, applicable to both civil and criminal actions. Although the legislative history is silent, the drafters of Rule 4–245(a) must have realized that the mailbox rule would apply when they used the words "serves notice" in Rule 4–245(a).

Lee attempts to strengthen his argument on this point based on Md. Rule 1–203(d). That rule states:

---

**9.** The Federal Rules of Criminal Procedure contain similar, but more elaborate, procedural safeguards to prevent prejudice to a defendant when the U.S. Attorney files a dangerous offender notice seeking increased punishment by reason of one or more prior convictions. Federal Rule of Criminal Procedure 49(e) provides:

"(e) **Filing of Dangerous Offender Notice.** A filing with the court pursuant to 18 U.S.C. § 3575(a) or 21 U.S.C. § 849(a) shall be made by filing the notice with the clerk of the court. The clerk shall transmit the notice to the chief judge or, if the chief judge is the presiding judge in the case, to another judge or United States magistrate in the district, except that in a district having a single judge and no United States magistrate, the clerk shall transmit the notice to the court only after the time for disclosure specified in the aforementioned statutes and shall seal the notice as permitted by local rule."

**"(d) Additional Time After Service by Mail.**—Whenever a party has the right or is required to do some act or take some proceeding within a prescribed period after service upon the party of a notice or other paper and service is made by mail, three days shall be added to the prescribed period."

Lee argues that "[w]here, as here, the purpose of requiring service is to insure a party a specified minimum amount of notice, and the diminution of the notice period cannot be ameliorated by adding three days to act as contemplated by the Rules, the 'mailbox rule' cannot be deemed to apply." The purpose of Rule 1–203(d), however, is not merely to ensure a party a specified minimum amount of notice, but to ensure a party time to *act.* Lee ignores this express scope of Rule 1–203(d). The three-day time period provided therein is, by the unambiguous terms of the rule itself, only available where a party must or may "do some act" or "take some proceeding within a prescribed period" of time. Lee was neither required nor permitted to make any formal response upon receipt of the notice. Thus, Rule 1–203(d) is inapplicable to service of an enhanced penalty notice under Rule 4–245(b). Because a defendant is not required to take any action in response to the notice, he needs no extra time to compensate for the fact that the notice was mailed instead of hand-delivered. That actual delivery of the notice frequently might be a day or two after the fifteenth day prior to trial was obviously within the contemplation of the drafters and requires no "amelioration."

■ Lee's next argument is that Rule 1–321(a) applies "[e]xcept as otherwise provided in these rules or by order of court." That rule further provides that service should be on the attorney when a defendant is represented by counsel. Lee claims that Rule 4–245(b) "otherwise provides" because it allows service to be made "on the defendant *or* counsel." (Emphasis added). Lee thus concludes that Rule 4–245(b) is fully within the exception set forth in Rule 1–321(a) and that Rule 1–321, therefore, has no application here.

A straightforward reading of Rules 4–245(b) and 1–321(a) demonstrates that service of an enhanced penalty notice may be upon the defendant when not represented by counsel, but should be upon counsel once counsel's appearance has been entered. But even assuming that Rule 4–245(b) allows service upon either a defendant represented by counsel or upon defendant's counsel, this fact does not render Rule 1–321 inapplicable. Rule 1–321 still governs on all matters for which no other provision is provided. The mailbox rule still applies to service of a Rule 4–245 enhanced penalty notice when service is mailed to a defendant's attorney.

Finally, Lee argues in more general terms that the mailbox rule should not apply to criminal cases. He correctly notes that the mailbox rule contained in Md. Rule 1–321(a) is derived from Federal Rule of Civil Procedure 5(a),[10] but incorrectly states that the Federal Rules of Criminal Procedure contain no equivalent provision. Federal Rule of Criminal Procedure 49(b), governing how service is to be made, explicitly states in pertinent part that "[s]ervice upon the attorney or upon a party shall be made in the manner provided in civil actions." Federal Rule of Civil Procedure 5(b) in turn states, inter alia, that "[s]ervice is complete upon mailing." Thus, were Md. Rule 4–245 a rule of federal criminal procedure, service could be made by mail and the mailbox rule would apply. Furthermore, since the service provisions of the Maryland Rules are found in the General Provisions Title, applicable to both civil and criminal actions, we hold that the mailbox rule applies to enhanced penalty notices required by Rule 4–245(b).

*JUDGMENT AFFIRMED; COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY PETITIONER.*

ELDRIDGE, Judge, dissenting:

I disagree with the majority's view that the notice requirements of Maryland Rule 4–245(b) are met when the State

---

**10.** See footnote 4, *supra.*

*mails* notice of its intention to seek enhanced punishment for subsequent offenders at least 15 days before trial in the circuit court or at least five days before trial in the District Court. Instead, public policy and the purpose of the rule are served only when the time period is measured from the date of the actual receipt of notice.

The majority opinion favors the position articulated by the Rules Committee over public policy adopted by the General Assembly. Specifically, the majority asserts that the purpose of the rule "is not compromised in any significant way if the 15–day period is cut short by one or two days while the notice travels through the postal system." The Legislature, however, has expressed a different view with respect to notice of enhanced punishment. For example, if a defendant were convicted of first degree murder, the maximum penalty he would face would be life imprisonment *unless* the State "notified" the person in writing at least 30 days before trial that it would seek either the death penalty or life without parole. *See* Code (1957, 1992 Repl.Vol.), Art. 27, § 412(b). The majority distinguishes this statutory provision from Rule 4–245(b) because the statute requires that a defendant be "notified," whereas the rule requires the State to "serve notice" on the defendant. The majority jumps semantic hurdles to justify imposing a mailbox rule overtop of Rule 4–245, but it is clear from § 412(b) that the Legislature intended the defendant to receive notice a full 30 days before trial. Since Rule 4–245(b) similarly involves notice of enhanced punishment, we should read the 15–day provision to mean that the defendant receive notice 15 days before trial in the circuit court and five days before trial in the District Court.

In addition, requiring timely receipt of the notice better effectuates the twofold purpose of Rule 4–245(b): to inform the defendant of the "nature of the State's case against him," and to provide a period of time during which the defendant can evaluate his case in light of the risk of greater punishment he now faces. *Carter v. State,* 319 Md. 618, 621, 574 A.2d 305, 306 (1990); *King v. State,* 300 Md. 218, 231, 477 A.2d 768, 774, 775 (1984). A defendant who knows that he risks an enhanced

punishment if convicted may decide to accept an offered plea bargain or may adjust his trial strategy. By allowing a mailing to start the clock on the Rule 4–245(b) notice provision, the majority has not merely lopped off a few days from the time in which a defendant is first made aware of the risk of enhanced penalty; it has also eroded the time period during which a defendant can reassess his case. The loss may prove critical, especially if the defendant's case is complex.

Moreover, the majority incorrectly assumes that the delay will always be only a day or two. It is common knowledge that the postal system sometimes takes considerably longer to deliver mail. In light of the relatively short time periods involved, with the required notice only five days before trial in the District Court, the rule will be totally ineffective in some instances.

Both legislative policy and the policy underlying Rule 4–245(b) require that a defendant *receive* notice 15 days before the circuit court trial if the State seeks an enhanced punishment. I would vacate the petitioner's sentence and remand the case for resentencing.

Judge ROBERT M. BELL has authorized me to state that he concurs with the views expressed herein.