916 A.2d 235

**CENTRE INSURANCE COMPANY, et al.**

v.

**J.T.W.**

**J.T.W.**

v.

**Centre Insurance Company, et al.**

**Nos. 52, 56, Sept. Term, 2006.**

Court of Appeals of Maryland.

Jan. 9, 2007.

Reconsideration Denied March 9, 2007.

Harold A. MacLaughlin (J. Paul Mullen, Lord & Whip, P.A., Baltimore, on brief), J. Van Lear Dorsey, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kathleen A. Birrane, Asst. Atty. Gen., on brief), for petitioner.

James T. Walter, LaPlata, for respondent.

Daniel A. Brown, Brown & Gould, LLP, Bethesda, for Amicus Curiae Coventry Health Care of Delaware, Inc.

Argued before BELL, C. J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This opinion addresses two cases before the Court which present a virtually identical issue.[1] The question to be re-

---

1. We have consolidated the two cases on appeal (No. 52 and No. 56) because each case raises the same issue. The pertinent question presented in a petition for certiorari in case No. 52 was phrased as follows:

> "Did the Court of Special Appeals err in holding that the thirty-day period in which a Petition for Judicial Review of an administrative decision may be timely filed begins only upon actual receipt of the decision, notwithstanding the fact that all that is required by the operative statute, § 2–204(c) of the Insurance Article, is the mailing of the decision by regular first-class mail?"

The question presented in the petition for certiorari in case No. 56 was phrased as follows:

> "Was the Circuit Court correct when it held that the thirty-day period in which a Petition for Judicial Review of a decision of the MIA may be timely filed begins upon mailing of the order, given the fact that all that is required by the operative statute, § 2–204(c) of the

solved is: When, under Title 2 of Maryland's Insurance Article,[2] does the 30–day filing period for a petition for judicial review of an administrative decision begin?[3] Centre Insurance Company, Inc., Z.C. Insurance Agency, Inc., and the Maryland Insurance Commissioner[4] ("Commissioner")[5] argue that the plain language of the Insurance Article provides that the 30–day period begins when the order resulting from an administrative hearing is *mailed.* J.T.W.[6] argues that the 30–day period begins when the order resulting from an administrative hearing is *received* by the affected party. We hold that the plain language of the pertinent statutes provides that, in the context of the relevant sections of the Insurance Article, the 30–day filing period for a petition for judicial review of an administrative decision under §§ 2–204(c) and 2–215(d)(1) begins when the order resulting from a relevant administrative hearing is *mailed.*

---

Insurance Article, is the mailing of the decision by regular first-class mail?"

**2.** Maryland Code (1995, 2003 Repl.Vol.), § § 2–201 through 2–215 of the Insurance Article are the provisions of the code relevant to the case at bar.

**3.** No argument has been raised as to timeliness under the "General Provisions" of Maryland Rule 1–203(c). That rule, if applicable at all, would have no effect on Case No. 52. Nowhere in the record have we found that J.T.W. brought the provisions of Rule 1–203(c) to the attention of the trial judge. Additionally, he did not raise it before this Court. Accordingly, we do not address it in this case.

**4.** On January 5, 2005 (Case No. 52) and December 12, 2005 (Case No. 56), respectively, the Commissioner filed a Notice of Intention to Participate, and was joined as an interested party to the proceedings.

**5.** The parties' respective roles as petitioners and respondents are different in each case. In order to facilitate clarity and simplify our discussion, we shall generally refer in both cases, where the context dictates, to Centre Insurance Company, Inc., Z.C. Sterling Insurance Agency, Inc., and the Commissioner collectively as "Centre" and to J.T.W. as "J.T.W." J.T.W. appears *pro se.*

**6.** Throughout the proceedings in these consolidated cases, J.T.W.'s actual name has been redacted and he has been referred to as "J.T.W."

## I. Facts

This case arises out of the unfortunate occurrence of a tornado, which touched down in La Plata, Maryland on April 28, 2002. The tornado destroyed J.T.W.'s home and personal property. In response to this incident, J.T.W. filed several claims with his homeowner's insurance carrier and agent, respectively: Centre Insurance Company, Inc. and Z.C. Sterling Insurance Agency, Inc. J.T.W. received some benefits under his homeowner's insurance policy, but was not satisfied with the companies' response as a whole. As a result, J.T.W. filed administrative complaints with the Maryland Insurance Administration ("MIA") charging that Centre violated the Insurance Article by the manner in which it handled his claims.

### No. 52

In October 2002, J.T.W. filed a complaint with the MIA, asserting that Centre violated Maryland law by the manner in which it handled his claims (in particular, the fact that some of his claims were denied). In January 2003, the MIA notified J.T.W. that it had failed to find any violations by Centre of the Maryland Insurance Article. J.T.W. then sought review of the MIA's decision. The parties entered into mediation before an Administrative Law Judge ("ALJ"). As a result of the mediation, on June 11, 2003, the parties entered into a settlement agreement.

In October 2003 and February 2004, J.T.W. filed additional complaints with the MIA, asserting that Centre had failed to cover his claimed losses and had failed to comply with the settlement agreement. The MIA notified J.T.W. in January and May 2004, respectively, that it had again failed to find any violations by Centre. J.T.W. requested administrative hearings in both instances. The claims were consolidated and referred to the Office of Administrative Hearings ("OAH").[7]

7. Maryland Code (1984, 2004 Repl.Vol.), § 10–205(a)(1) of the State Government Article provides that the MIA is permitted to delegate the authority to hold a hearing to the OAH.

On July 28 and 29, 2004, the OAH held a hearing. On September 27, 2004, the ALJ issued an order and decision, upholding in part and denying in part J.T.W.'s complaint.

The order was mailed to the parties on October 14, 2004.[8] It is uncontroverted that J.T.W. did not receive the order until October 20, 2004. On November 19, 2004, J.T.W. filed a petition for judicial review in the Circuit Court for Charles County. Centre then filed a motion to dismiss J.T.W.'s petition. Centre argued that, pursuant to Maryland Code (1995, 2003 Repl.Vol.), § 2–215(d) of the Insurance Article, a petition for judicial review must be filed within 30 days after such a petitioner for judicial review is served with the order,[9] and that Maryland Code (1995, 2003 Repl.Vol.), § 2–204(c) of the Insurance Article defines service as the *mailing* of an order. Therefore, Centre argued that J.T.W. filed his petition in an untimely manner, 36 days after the order had been mailed (October 14, 2004–November 19, 2004). J.T.W. asserted, conversely, that the operative date for service was his *receipt* of the order. That occurred on October 20, 2004, which would

---

**8.** The order was originally-dated and mailed on September 27, 2004. However, on October 14, 2004, the ALJ mailed an amended version which superceded the prior order. For the purposes of this case, the parties have agreed that October 14, 2004, is the operative mailing date.

**9.** Maryland Code (1995, 2003 Repl.Vol.), § 2–215(d) of the Insurance Article states:

"(d) *Filing petition for judicial review.*—To take an appeal, a person shall file a petition for judicial review with the appropriate circuit court within 30 days after:

(1) the order resulting from the hearing was **served** on the persons entitled to receive it;

(2) the order of the Commissioner denying rehearing or reargument was served on the persons entitled to receive it; or

(3) the refusal of the Commissioner to grant a hearing."

(Bold emphasis added). The process under § 2–215(d)(1) is further explained by § 2–204(c) of the Insurance Article, which states:

"(c) *Service.*—A n order or notice may be served on a person b y:

(1) mailing it to the person at the last known principal place of business of the person, as listed in the records of the Commissioner; or

(2) otherwise delivering it to the person."

mean that he filed his petition within the required 30–day period. The Circuit Court found in favor of Centre, holding that service was effective upon mailing. On April 20, 2005, the Circuit Court filed an order dismissing J.T.W.'s appeal of the administrative order.

J.T.W. then timely appealed to the Court of Special Appeals. On April 28, 2006, the intermediate appellate court filed its opinion, reversing the Circuit Court's decision. *J.T.W. v. Centre Ins. Co.*, 168 Md.App. 492, 897 A.2d 288 (2006). The court agreed with J.T.W.'s argument that, under Maryland Rule 7–203(a)(3),[10] the 30–day time limit for filing a petition for judicial review began to run on the date that he received the ALJ's order and decision. *J. T.W.*, 168 Md.App. at 497, 897 A.2d at 291. The court referenced § 2–215(d) of the Insurance Article, finding that "J.T.W. was required to file a petition for judicial review within thirty days following service of the order resulting from the hearing." *J.T.W.*, 168 Md.App. at 497, 897 A.2d at 292. Additionally, the intermediate appellate court cited to *Rockwood Casualty Insurance Co. v. Uninsured Employers' Fund*, 385 Md. 99, 867 A.2d 1026 (2005), in support of the premise that "the term 'serve' implies actual receipt." *J.T.W.*, 168 Md.App. at 497, 897 A.2d at 292. The court concluded, stating:

> "The requirement that a petition for judicial review be filed within thirty days after the order 'was served on the persons entitled to receive it,' implies that the party must have actually received the order. Ins. § 2–215(d)(1). Consequently, 'notice [is] required by law to be received by the petitioner,' and the thirty day limit begins to run 'the date

---

**10.** Maryland Rule 7–203 states:

"(a) **Generally.** Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

(1) the date of the order or action of which review is sought;

(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or

(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner."

the petitioner receive[s] notice of the agency's order or action.' Md. Rule 7–203(a)(3)."

*J.T.W.*, 168 Md.App. at 498, 897 A.2d at 292. The intermediate appellate court only briefly referenced § 2–204(c) of the Insurance Article (which defines "service") and did not address any impact that it would have upon the court's interpretation of § 2–215(d)(1) of the Insurance Article.

Centre timely filed a petition for certiorari, which this Court granted on August 29, 2006. *Centre Ins. v. J.T.W.*, 394 Md. 307, 905 A.2d 842 (2006).

## No. 56

On September 14, 2004, J.T.W. filed another complaint with the MIA alleging that Centre violated the Insurance Article by failing to reimburse him for costs associated with the demolition of what remained of his La Plata home after the tornado. The MIA found no violations by Centre. On May 4, 2005, J.T.W. requested an administrative hearing. A hearing was held by the OAH on September 15, 2005. On October 18, 2005, the ALJ issued and mailed an order and decision, finding in favor of Centre. J.T.W. alleges that he received the order in the mail on October 21, 2005.[11] On November 18, 2005, J.T.W. filed a petition for judicial review with the Circuit Court for Charles County, 31 days after the order was mailed and 28 days after he received the order. On December 8, 2005, and January 13, 2006, Centre filed motions to dismiss, which the Circuit Court granted on March 30, 2006.

J.T.W. then timely filed an appeal to the Court of Special Appeals. Prior to the intermediate appellate court hearing the matter, Centre filed a petition for writ of certiorari in this

---

11. J.T.W. asserts that the notice mailed with the order contained a statement reading:

> " 'A party aggrieved by this final decision of the Maryland Insurance Administration may file a petition for judicial review with the Circuit Court for Baltimore City, or if the party is an individual, to the circuit court where the individual resides, *within thirty (30) days after delivery of the decision.*' "

While this statement is misleading considering our determination *infra*, it does not change our analysis of the statutory law.

Court. On September 8, 2006, we granted certiorari. *See Centre Ins. v. J.T.W.*, 394 Md. 307, 905 A.2d 842 (2006).

## II. Discussion

The Circuit Court, in both instances, dismissed J.T.W.'s petitions for judicial review as untimely. Delineating *when* the 30–day time period for filing a petition begins under § 2–215(d) is key to our determination. Thus, the crux of this case is the definition of "service," as applicable to § 2–215(d)(1) of the Insurance Article. Because we hold that J.T.W.'s petitions were not filed within the relevant 30–day time period,[12] the Circuit Court (in both instances) was without any recourse—the proceeding was subject to a statute of limitations. *Colao v. County Council of Prince George's County*, 346 Md. 342, 362–64, 697 A.2d 96, 106–07 (1997); *see also Kim v. Comptroller of Treasury*, 350 Md. 527, 536, 714 A.2d 176, 180 (1998).[13] When the petitions were challenged, the trial court was required to dismiss them.

### A. Statutory Construction

Our first step in resolving the conflict between the parties is to determine whether the Legislature intended that the term

---

**12.** Again w e note that J.T.W. did not raise below, or in this Court, the impact, if any, that Maryland Rule 1–203(c) might have, or the conflict, if any, between the rule and the statute, in respect to case No. 56. Accordingly, we also do not consider that general rule in our resolution of case No. 56.

**13.** Judge Wilner, writing for the Court in *Colao*, explained the application of the time period to petitions for judicial review:

"Lest this result seem harsh or unfair, it is worth remembering that one of the important goals of the new procedure was to make the judicial review process more efficient. The basic battle in these cases is fought at the agency level. Whether acting under an administrative procedures act or under common law principles, the court's role is essentially limited to assuring that the agency acted lawfully, that there was substantial evidence to support its finding, and that it was not arbitrary.... Making the 30–day requirement for filing the petition in the nature of an absolute statute of limitations, subject to waiver by failure of a respondent to raise the defense in a proper manner but not subject to discretionary extension, was in furtherance of that objective...."

346 Md. at 364, 697 A.2d at 106–07.

"service," as used in § 2–215(d)(1) of the Insurance Article, requires actual receipt of the order by the affected party or whether the mailing of the order accomplishes service. Our resolution of this issue requires an examination of the statutes involved in the case *sub judice.*

■ We recently discussed the canons of statutory construction in *Chow v. State,* 393 Md. 431, 903 A.2d 388 (2006):

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *See Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004). Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004).

"In construing the plain language, '[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.' *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003); *County Council v. Dutcher,* 365 Md. 399, 416–417, 780 A.2d 1137, 1147 (2001). Statutory text ' "should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory." ' *Collins,* 383 Md. at 691, 861 A.2d at 732 (quoting *James v. Butler,* 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003)). The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect. *Deville,* 383 Md. at 223, 858 A.2d at 487; *Navarro–Monzo v. Washington Adventist,* 380 Md. 195, 204, 844 A.2d 406, 411 (2004).

"If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. *Collins,* 383 Md. at 688–89, 861 A.2d at 730. 'If there is no ambiguity in that language, either inherently or by reference to other relevant

laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for "the Legislature is presumed to have meant what it said and said what it meant." ' *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002))."

*Chow,* 393 Md. at 443–44, 903 A.2d at 395 (some quotations omitted) (quoting *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005)); *see also City of Baltimore Dev. Corp. v. Carmel Realty Assoc.,* 395 Md. 299, 910 A.2d 406 (2006). Additionally, we have expounded upon the importance of resolving ambiguity within a statute, stating:

" 'In some cases, the statutory text reveals ambiguity, and then the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal. However, before judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute. Where the statutory language is free from such ambiguity, courts will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute. Only when faced with ambiguity will courts consider both the literal or usual meaning of the words as well as their meaning in light of the objectives and purposes of the enactment. As our predecessors noted, "We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists." Therefore, the strongly preferred norm of statutory interpretation is to effectuate the plain language of the statutory text.'

*Price,* at 387–88, 835 A.2d at 1226 (citations omitted); *Goff v. State,* 387 Md. 327, 342, 875 A.2d 132, 141 (2005); *Pete v. State,* 384 Md. 47, 57–58, 862 A.2d 419, 425 (2004)."

*Chow,* 393 Md. at 444, 903 A.2d at 395. It is also clear that "[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake v. State,* 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006) (citing *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005)); *see Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994).

We analyze the contested provisions of Maryland's Insurance Article in the context of the statutory scheme as a whole and construe the plain language so that the various sections of the article do not conflict with one another. *Chow,* 393 Md. at 443, 903 A.2d at 395; *Deville,* 383 Md. at 223, 858 A.2d at 487; *Navarro–Monzo,* 380 Md. at 204, 844 A.2d at 411. Furthermore, the Court recently emphasized in *Walzer v. Osborne,* 395 Md. 563, 911 A.2d 427 (2006):

> "In addition, ' "the meaning of the plainest language is controlled by the context in which it appears." ' *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996) (citations omitted). As this Court has stated,
>
>> [b]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.
>
> *Gordon Family P'ship v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997) (citations omitted)."

*Walzer,* 395 Md. at 573, 911 A.2d at 432.

### B. "Service" in the Context of Title 2 of Maryland's Insurance Article

The Circuit Court, in both cases, dismissed the petitions for judicial review because they were filed in an untimely manner. Section 2–215 of the Insurance Article provides the statutory framework under which such petitions for judicial review are governed.

The plain language of the statute reads in relevant part: "To take an appeal, a person shall file a petition for judicial review with the appropriate circuit court within 30 days after: (1) the order resulting from the hearing was *served* on the persons entitled to receive it. . . ." § 2–215(d) of the Insurance Article (emphasis added). J.T.W. contends that the term "service," as utilized in § 2–215(d)(1), means actual receipt by the involved party. Under that definition, the 30–day time limit for filing a petition for judicial review, pursuant to the Insurance Article, would begin to run on the date that an individual receives an order resulting from an administrative hearing. Consequently, in the particular circumstances of the case *sub judice,* under the J.T.W.'s interpretation of § 2–215(d)(1), he would have timely filed both of his petitions for judicial review with the Circuit Court. We disagree with this interpretation.

In support of his argument, J.T.W. cites to Maryland Rule 7–203(a), which states in relevant part:

"Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

(1) the date of the order or action of which review is sought;

(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or

(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner."

J.T.W. asserts that the determinative factor under Rule 7–203(a) is that a petition for judicial review shall be filed within 30 days of the *latest* of the enumerated dates—i.e., in the present circumstances, the date on which J.T.W. *received* notice. Md. Rule 7–203(a)(3). J.T.W., however, fails to acknowledge that Rule 7–203(a) specifically provides qualifications to this requirement, stating: (1) "Except as otherwise provided . . . *by statute* . . . ," (emphasis added) and (2) ". . . if

notice was required by law to be received by the petitioner." We find that the Legislature has so otherwise provided by statute (specifically § 2–204(c) of the Insurance Article) and, accordingly, notice was not required by law to be *received* by J.T.W. under the statutory scheme of the relevant sections of the Insurance Article.

Additionally, J.T.W. fails to recognize that this Court, albeit in a slightly different procedural context, has previously ruled on the timeliness of an appeal from an order issued under the Insurance Article. In *Nuger v. State Insurance Commissioner*, 231 Md. 543, 191 A.2d 222 (1963), the Court addressed the time for filing an appeal from an order of the Insurance Commissioner in the context of Maryland Rule B4, the predecessor rule to Rule 7–203. In that case, the Court was concerned with whether the 30–day period began with the *filing* of an order rather than the *mailing* of the order. *Id.* at 544, 191 A.2d at 223. The Court concluded that an appeal within 30 days of the *mailing* of the order was timely, stating:

"If notice is required to be sent in every decision in a contested case, it would seem to bring this case within the exception to the Rule, regardless of the court in which review is sought. The appellee [Commissioner] did in fact send notice of its action, and we hold that the appeal therefrom, within thirty days from its mailing, was timely."

*Id.* at 546, 191 A.2d at 224. While *Nuger* is somewhat distinguishable from the case *sub judice*, it does show that this Court interpreted a related 30–day filing period as beginning with the *mailing* of an order. Furthermore, *Nuger* has never been overruled, and continues to represent this Court's interpretation of the statutory law, albeit in a different procedural situation, and in the context of the predecessor Rule B4.

J.T.W. relies, in part, on this Court's decision in *Rockwood Casualty Insurance Co. v. Uninsured Employers' Fund*, 385 Md. 99, 867 A.2d 1026 (2005). In *Rockwood*, the Court analyzed service under § 19–406 of the Insurance Article, a section relating to workers' compensation. As the Court explained, "Section 19–406 of the Insurance Article requires

the insurer to *serve* the employer with notice and gives the insurer two ways to accomplish service: personal service or service by certified mail." *Rockwood*, 385 Md. at 109, 867 A.2d at 1031 (footnote omitted). Specifically, § 19–406 states: "[A]n insurer may not cancel or refuse to renew a workers' compensation insurance policy before its expiration unless, at least 30 days before the date of cancellation or nonrenewal, the insurer: (1) serves on the employer, by personal service or certified mail ... a notice of intention to cancel or nonrenew the policy...." § 19–406(a) of the Insurance Article.

In interpreting the plain language of § 19–406(a)(1), the *Rockwood* Court first looked to the *Black's Law Dictionary* definition of "serve," which states: "1. To make legal delivery of (a notice or process).... 2. To present (a person) with a notice or process as required by law...." *Black's Law Dictionary* 1399 (8th ed.2004); *see also Rockwood*, 385 Md. at 109–10, 867 A.2d at 1032. The Court found that, in the context of the workers' compensation sections, "[t]he term implies actual receipt." *Rockwood*, 385 Md. at 110, 867 A.2d at 1032. Judge Greene, writing for the Court, expounded upon this, stating: "If the Legislature intended some lesser standard, it could have just required the insurer to *send* or *mail* the notice to the employer by regular mail. Instead, it requires the insurer to *serve* the notice by personal delivery or by certified mail." *Id.* Based on its analysis of § 19–406(a), the Court concluded: "[W]e hold that § 19–406(a) permits an insurer to choose whether to serve notice of cancellation of insurance by personal delivery or by certified mail. Service by certified mail, however, is not complete upon mailing. The statute contemplates actual delivery of notice." *Rockwood*, 385 Md. at 121, 867 A.2d at 1039.

J.T.W. rests his reliance upon *Rockwood* on a misinterpretation of the Court's holding in that case. J.T.W. grasps the Court's statement that "[t]he term [service] implies actual receipt," *id.* at 110, 867 A.2d at 1032, and applies it out of context with the rest of the *Rockwood* holding, ignoring this Court's contrasting of the language there applicable with our comment that if the Legislature had meant a lesser standard

to apply it would have "just required the insurer to *send* or *mail* the notice to the employer by regular mail." 385 Md. at 110, 867 A.2d at 1032. In the present case, the Legislature created just that type of *lesser* standard.

The *Rockwood* Court found that the term *serve,* **in the context of § 19–406 of the Insurance Article,** implies actual receipt. This is evident from the fact that § 19–406(a) specifically requires that the insurer serve the notice *by personal delivery* or *by certified mail.* In the case *sub judice,* on the other hand, as we have stated, we are concerned with the term *serve* as it is utilized in § 2–215(d)(1). Placed into context with the rest of Title 2 of the Insurance Article (in particular, in context with § 2–204(c)) the term *serve,* as used in § 2–215(d)(1), does not imply actual receipt.

Instead, § 2–204(c) of the Insurance Article provides the definition of "service" which is to be applied in the context of the statutory scheme of Title 2 of the Insurance Article. Section 2–204(c) states in relevant part:

"An order or notice may be served on a person by:

(1) mailing it to the person at the last known principal place of business of the person, as listed in the records of the Commissioner; or

(2) otherwise delivering it to the person."

The plain language of the statute is clear and unambiguous and reflects the intent of the Legislature. Moreover, it is clearly distinguishable from the statutory language construed in *Rockwood.* As pertinent to Title 2 of the Insurance Article, the Legislature has specifically provided in § 2–204(c) that service of an order may be accomplished by the *mailing* of the order to the involved person.

We must read and interpret § 2–215(d)(1) in the context of the statutory scheme of the Insurance Article as a whole. In doing so, we harmonize the definition of "service" in § 2–204(c) with the term as it is utilized in § 2–215(d)(1). It is unambiguous that service, in that context, may be accomplished by the *mailing* of an order. Thus, we shall give effect to the statute as it is written. *Chow,* 393 Md. at 444, 903 A.2d

at 395; *Collins,* 383 Md. at 688–89, 861 A.2d at 730. Additionally, holding that service required the *receipt* of the order could lead to unreasonable or illogical results, i.e., service might never be able to be accomplished. For example, if the individual to whom an order was mailed happened to be out of the country for several months or years he or she would not be deemed to have been served because they had not actually *received* the order. As stated *supra,* we avoid such unreasonable and illogical construction of statutes. *Blake,* 395 Md. at 224, 909 A.2d at 1026 (citing *Gwin,* 385 Md. at 462, 869 A.2d at 835); *see Frost,* 336 Md. at 137, 647 A.2d at 112.

J.T.W. also relies on the Court of Special Appeals' holding below, where that court found that:

> "The requirement that a petition for judicial review be filed within thirty days after the order 'was served on the persons entitled to receive it,' implies that the party must have actually received the order. Ins. § 2–215(d)(1). Consequently, 'notice [is] required by law to be received by the petitioner,' and the thirty day limit begins to run 'the date the petitioner receive[s] notice of the agency's order or action.' Md. Rule 7–203(a)(3)."

*J.T.W.,* 168 Md.App. at 498, 897 A.2d at 292. The intermediate appellate court based its holding on this Court's decision in *Rockwood.* The Court of Special Appeals, however, failed to distinguish the *Rockwood* holding, as we have, *supra.* Additionally, the intermediate appellate court did not interpret the Legislature's use of the term *serve* in § 2–215(d)(1) in the context of Title 2 of the Insurance Article as a whole, especially in light of § 2–204(c). The court briefly mentioned § 2–204(c), but did not apply its definition of how service may be accomplished.

Furthermore, this Court has previously held, in situations similar to that of the case *sub judice,* that service does not always require actual receipt. In *Renehan v. Public Service Commission,* 231 Md. 59, 188 A.2d 566 (1963), the Court addressed the timeliness of an appeal from an order of the Public Service Commission to a Circuit Court. 231 Md. at 61,

188 A.2d at 566. The Court affirmed the Circuit Court for Carroll County's dismissal of a petition for judicial review as untimely. This Court reached its conclusion by analyzing Rule 1101(d)(2), a predecessor rule to Rule 7–203. The Court concluded that service was made by *mailing* the order to the affected party and specifically stated that: "There is no provision of law which requires that notice of the action of the Public Service Commission be received by a party in order to make it effective." *Renehan*, 231 Md. at 63, 188 A.2d at 568.

In *Lee v. State*, 332 Md. 654, 632 A.2d 1183 (1993), the Court considered whether the State had "complied with the notice requirement of Maryland Rule 4–245(b) in seeking enhanced punishment" of an individual for a second conviction of possession of cocaine. 332 Md. at 656, 632 A.2d at 1184. At the time, Rule 4–425(b) required that the State's Attorney " 'serve[ ] notice of the alleged prior conviction on the defendant or counsel . . . at least 15 days before trial in circuit court. . . .' " *Lee*, 332 Md. at 658, 632 A.2d at 1184 (quoting Md. Rule 4–245(b)). The State's Attorney's office mailed such a notice to the defendant. The defendant, however, argued that he never received the notice and, therefore, was not properly served. *Id.* at 657, 632 at 1184. The Court disagreed with the defendant's contention that Rule 4–245(b) required that notice be received in order to be effective. Construing Maryland Rules 1–321 and 4–245(b), the Court held that:

> "The latter rule mandates that the state's attorney *serve* notice at least 15 days prior to trial. This rule, combined with the provision of Rule 1–321 that service is complete upon mailing, makes it clear that service of the enhanced punishment notice must be either hand-delivered 15 days prior to trial or mailed 15 days prior to trial. What Rule 4–245(b) does not require is *receipt* of the notice 15 days prior to trial."

*Lee*, 332 Md. at 664, 632 A.2d at 1188. Moreover, the Court concluded:

"If the drafters of the rules had wanted to guarantee that the defendant actually received a copy of the notice 15 days before trial, they would not have used the words 'serves notice' in Rule 4–245. Rather, the rule would have required personal service, certified mail, or some other means of both assuring actual receipt by the defendant and defining a point from which to measure time."

*Lee,* 332 Md. at 665, 632 A.2d at 1188.

In the case *sub judice,* unlike in *Rockwood,* the statutory provision in question (§ 2–215(d)(1)) does not provide for personal service or service by certified mail. Moreover, § 2–204(c) defines "service" as mere *mailing.* If the Legislature had wanted "service" in the context of Title 2 of the Insurance Article to require actual receipt of an order by an affected party it would have so provided.

### III. Conclusion

In conclusion, we hold that, under §§ 2–204(c) and 2–215(d)(1) of the Insurance Article, the 30–day filing period for a relevant petition for judicial review of such an administrative decision begins on the date that the order is *mailed* to the affected party. Therefore, J.T.W. did not comply with the requirement for timely filing in either of his appeals. We reverse the judgment of the Court of Special Appeals in case No. 52 and affirm the decision of the Circuit Court for Charles County in case No. 56.

**IN CASE NO. 52 JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY JTW. IN CASE NO 56 JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. COSTS TO BE PAID BY JTW.**