924 A.2d 1160

**CLIPPER WINDPOWER, INC., et al.**

v.

**Paul C. SPRENGER, et al.**

**No. 136 Sept. Term, 2005.**

Court of Appeals of Maryland.

June 8, 2007.

540

Miles H. Mitchell, Deputy Gen. Counsel (Susan Stevens Miller, Gen. Counsel, Baltimore, MD), on brief; Jeffrey A. Lamken (David A. Super of Baker Botts, L.L.P., Washington, DC), on brief, for Petitioners.

John J. Coyle, Jr. (Hidey, Coyle & Monteleone, Cumberland, MD), on brief, for Respondents.

Argued Before BELL, C.J., RAKER, *WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

This case arises out of a dispute over the construction of a wind turbine facility in Garrett County, Maryland. On March 26, 2003, the Public Service Commission (the "Commission"), one of the petitioners, entered a final order (Order No. 78354) granting Clipper Windpower, Inc. ("Clipper"), the other petitioner (collectively "the petitioners"), a Certificate of Public Convenience and Necessity ("CPCN") for the construction of a 101 megawatt ("MW") wind turbine facility. On April 24,

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

2003, by letter signed by Eric Tribbey, on behalf of, and as its representative, Friends of Backbone Mountain ("Friends") requested a rehearing.[1] That request was denied (Order No. 78617). Thereafter, Tribbey, one of the respondents, acting on his own behalf, filed a petition in the Circuit Court for Baltimore City for judicial review[2] of both orders (Case No. 24–C–036366). This action for judicial review was consolidated with the judicial review action initiated by Paul C. Sprenger, Russell W. Bounds, and Troy Gnegy, the other respondents (collectively "the respondents"), who also filed petitions for judicial review (Case No. 24–C–036325).

Clipper and the Commission each filed a motion to dismiss, asserting that the respondents' petitions for judicial review

---

1. Maryland Code (1998), § 3–114 of the Public Utility Companies Article, governing rehearings, provides:
   " § 3–114. Rehearing.
   "(a) *Scope of rehearing.*—On rehearing, the Commission may:
   "(1) consider facts not presented in the original hearing, including facts arising after the date of the original hearing; and
   "(2) abrogate, change, or modify the original order by new order.
   "(b) *Effect of rehearing.*—Except as otherwise ordered by the Commission, the rehearing or application for the rehearing does not:
   "(1) stay the enforcement of an order of the Commission; or
   "(2) excuse a person affected by the order from complying with the terms of the order.
   "(c) *Application for rehearing.*—
   "(1) A party in interest may apply to the Commission for rehearing within 30 days after service of a final order on the party.
   "(2) The Commission may:
   "(i) act on the application; and
   "(ii) rehear a final order or conduct further proceedings on its own motion after the filing of a proposed order, as the Commission considers necessary.
   "(3) If a rehearing is granted on an application under this subsection, the Commission shall decide the case within 30 days after the case is finally submitted on rehearing."

2. Maryland Code (1998), § 3–202(a) of the Public Utility Companies Article provides the right to judicial review of orders and decisions of the Commission:
   " § 3–202. Right to judicial review of orders and decisions.
   "(a) *In general.*—Except for the staff of the Commission, a party or person in interest, including the People's Counsel, that is dissatisfied by a final decision or order of the Commission may seek judicial review of the decision or order as provided in this subtitle."

were untimely.[3] The Circuit Court agreed and, therefore, dismissed the actions for judicial review. The respondents noted an appeal to the Court of Special Appeals, which, in an unreported opinion, reversed the judgment of the Circuit Court.

We granted the petitions for writ of certiorari filed by both Clipper and the Commission, *Clipper Windpower v. Sprenger*, 391 Md. 577, 894 A.2d 545 (2006), to address:

"Whether PUC § 3–114(c) limits the right to request rehearing solely to 'a party in interest' that has properly intervened as such in the Commission's proceedings, and is thus distinguishable from PUC § 3–202(a) which provides a right to judicial review to 'a party or person in interest . . . dissatisfied by a final decision or order of the Commission . . .'?"[4]

---

3. Maryland Rule 7–203 provides, as relevant, the time requirements for filing an action for judicial review:

   "Rule 7–203.   Time for filing action.

   "(a) Generally. Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

   "(1) the date of the order or action of which review is sought;

   "(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or

   "(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner."

4. Clipper offers two questions for review:

   "1.   Whether PUC § 3–106 and PUC § 3–114 require a person to intervene in a Commission proceeding in order to be considered a 'party in interest' who may request rehearing of a Commission decision and thereby stay the time for filing a Petition for Review in the Circuit Court?

   "2.   Whether a request for rehearing of a Commission decision made 'on behalf of' an entity by its representative may also be deemed as a request made by the representative himself, in his individual capacity, such that the representative may himself petition the Circuit Court for judicial review of the Commission's decision?"

   We believe that the Commission has more accurately and clearly formulated the issue.

While, to be sure, the right to judicial review of orders and decisions of the Commission is available to "a party or person in interest . . . dissatisfied by a final decision or order of the Commission . . .," PUC § 3–202(a),[5] we conclude that only a "party in interest" may seek rehearing under PUC § 3–114. To be a "party in interest," if the requestor was not a party, the requestor must have intervened properly, pursuant to PUC § 3–106,[6] thus becoming a "party" to the proceeding.

## I.

On August 26, 2002, Clipper filed an application with the Commission seeking authorization to build a wind turbine facility for the purpose of generating electricity. As required, Clipper notified the public, by publishing a notice in both *The Republican* and *The Cumberland Times–News,* generally circulated newspapers in Garrett County, on the successive weeks of September 26, 2002, September 30, 2002, October 3, 2002, and October 6, 2002, of its application to build the facility, and the date, time, and location of a scheduled pre-hearing conference.

---

**5.** The respondents question whether notice properly was effected in the administrative proceedings in this case. We will not address the argument, however. It was not raised in a petition for certiorari or before the Court of Special Appeals and the intermediate appellate court did not decide it.

**6.** Maryland Code (1998), § 3–106 of the Public Utility Companies Article provides:

" § 3–106. Same—Intervention.

"(a) *Application*—If a person timely files, the person may apply to intervene in a proceeding before the Commission.

"(b) *Decision.*—The Commission shall grant leave to intervene unless the Commission concludes that:

"(1) the parties to the proceeding adequately represent the interest of the person seeking to intervene; or

"(2) the issues that the person seeks to raise are irrelevant or immaterial.

"(c) *Rights of intervenor.*—

"(1) An intervenor has all the rights of a party to a proceeding.

"(2) In a proceeding before the Commission, an individual who is an intervenor may represent himself or herself."

The wind turbine facility was to be composed of up to 67 individual turbines. Each turbine would consist of a free-standing tower approximately 262 feet in height. A rotor, having a diameter not in excess of 262 feet (80m) (39m blades), would be attached to the tower. The maximum combined height would be approximately "394 ft (120 m) with one blade in the vertical position." Clipper's executive summary of its proposal for the facility implied that some, but not all, of the turbines would be of that size and stated that all 67 turbines may not need to be built depending upon "factors ... not identified prior to [the] start of construction." In addition to the tower and the blade, each turbine would consist of a foundation anchoring it to the ground and a transformer that would collect the power from the turbines and transfer it to a substation through an "underground electrical collection system." All-weather gravel service roads would be built from existing hardtop roads and the cables associated with the electrical collection system were to be buried alongside such service roads. The total project area would cover approximately 10.8 miles and would be constructed on Backbone Mountain extending from "Wild Turkey Rock at an elevation of 3,228 ft (984 m) above sea level southwestward to Allegheny Heights at 3,200 ft (975 m)." Although three other sites were surveyed, Allegheny Heights was selected "because of wind resource potential and favorable site characteristics (primarily contiguous, well-exposed areas and proximity to three transmission lines)." [7]

An adjudicatory hearing regarding Clipper's proposal, at which attendance was high, "standing room only," was held. Clipper, the Department of Natural Resources's Power Plant Research Program, the staff of the Commission, and the Office of People's Counsel were the named parties to the proceeding. Pursuant to PUC § 3-106, four individual members of the public intervened and were granted party status.[8] Among

---

**7.** It appears that access to the project area via "improved hardtop roads" was also a factor in choosing this particular site over others.

**8.** They were Chandler S. Robbins, Ajax Eastman, D. Daniel Boone, and Jon E. Boone. None of these individuals is a party to the present action.

those in attendance were respondents Eric Tribbey and Russell Bounds, who also testified. Although both Tribbey and Bounds submitted citizen comment letters following the conclusion of the hearing, neither they, nor Friends, sought to intervene.

The hearing examiner issued a proposed order that contained and recommended settlement conditions to which all of the parties had agreed, which the Commission subsequently adopted. It issued a final order (Order No. 78354) approving Clipper's plan.

Tribbey, then, writing on behalf of Friends, submitted a letter to the Commission requesting a rehearing.[9] The Commission, by Order No. 78617, denied the request, explaining:

"This matter comes before the Public Service Commission ('Commission') as a result of a series of filings made by entities that did not appear as parties in the above-captioned proceeding. On April 24, 2003, the Friends of Backbone Mountain ('Friends') filed a *pro se* formal request for rehearing in this case. On April 25, 2003, Citizens for Responsible Wind Power ('Citizens') also filed a *pro se* formal request for rehearing in this case. A third *pro se*

---

9. In its entirety, the letter stated that:
   "Dear PSC,
   "This is a formal request for a rehearing on case # 8938 regarding placement of 400–foot tall windmills along the ridgeline of Backbone Mountain in Garrett County.
   "I represent the 'Friends of Backbone Mountain' a growing group of over 100 Garrett County citizens as a party of interest. This is a formal request for a rehearing on the decision regarding siting wind projects along the ridgeline of Backbone Mountain. The group requests a moratorium on construction of wind projects in Garrett County until enforceable siting criteria can be enforced. The group does not oppose alternative energy source projects but insists on reference to the Garrett County Development Plan and appropriate consideration to the overall impact of a project of this magnitude.
   "Please reference your guidelines concerning 'economics, aesthetics and historic sites' under title 7–207 'e' and '2'. Please postpone the approval of the certificate of public convenience and necessity until additional attention is given to siting plans regarding extremely large omnipresent structures such as the ones proposed in case # 8938."
   The letter was signed, "Sincerely, Eric Tribbey Representative, Friends of Backbone Mountain."

formal request for rehearing in this matter was filed on April 28, 2003, by The Garrett County Historical Society ('Garrett Historical'). . . . Friends made an additional filing, by Counsel, on June 27, 2003. This June 27th filing includes two documents: (1) an Application to Intervene, and (2) a Supplement to Request for Rehearing and Application to Reopen for Further Evidence . . . . On August 5, 2003, Counsel for Paul C. Sprenger filed an Application to Intervene and a Motion for Reconsideration and for Modification of the Order of the Public Service Commission ('Sprenger Motion'). This August 5th filing includes four exhibits ('Sprenger Exhibits A, B, C, and D'). None of the actual parties to the case have raised any objection to the Commission's Order No. 78354, issued on March 26, 2003.

"The Commission denies all four requests. Public Utility Companies ('PUC') Article § 3–114(c)(1) restricts the right to apply for rehearing to parties: 'A *party in interest* may apply to the Commission for rehearing within 30 days after service of a final order on the party.' [Emphasis added.] Since none of the four entities requesting rehearing were parties to the proceeding, none qualify to request rehearing. Additionally, the filing made on behalf of Friends on June 27, 2003, is not a filing provided for either under PUC § 3–114 or Code of Maryland Regulations ('COMAR') § 20.07.02.08,[10] both of which contemplate a single, compre-

---

**10.** COMAR § 20.07.02.08 states:

".08 Rehearings.

"A. Applications for reopening a cause after final submission, or for rehearing after final order, shall be made by petition in writing, stating specifically the grounds upon which the application is based.

"B. If the application is to reopen the cause for further evidence, the nature and purpose of the evidence shall be stated, and may not be merely cumulative.

"C. If the application is for a rehearing, the petition shall specify the findings of fact or of law claimed to be erroneous, together with a brief statement of the ground of the alleged error.

"D. A petition seeking to reverse or modify a decision, order, or requirement of the Commission shall:

"(1) Fully set forth the facts, circumstances, and consequences relied upon; and

hensive rehearing application by a party. Friends' June 27th filing is also well beyond the thirty-day period during which parties may request rehearing. Sprenger's filings are still further beyond the thirty-day period during which parties may request rehearing.

"Clipper complied with all of the procedural elements of the Certificate of Public Convenience and Necessity ('CPCN') process, including the provisions of COMAR § 20.79.01.03, and also complied with the Hearing Examiner's direction to advertise the pre-hearing conference and the public hearings in local Garrett County newspapers. The four entities requesting rehearing had sufficient notice and opportunity to intervene as parties; since they did not, they do not have standing to request rehearing. . . .

". . . as already stated, Clipper properly advertised the pre-hearing conference and the public hearings in local Garrett County newspapers, thus providing sufficient notice to enable prompt and timely intervention. This is not a question of whether Friends could have intervened 'sooner in the process,' but rather an issue of whether Friends attempted to intervene *during* the process at all. The Commission finds that the attempted intervention is outside the process, and cannot be granted since the proceeding closed prior to the attempted intervention."

Order No. 78617 (internal footnotes omitted). Thus, the Commission concluded that Friends was not a "party in interest" under PUC § 3–114 because it had not properly intervened under PUC § 3–106. The Commission also determined that it already had fully considered the issues presented for rehearing in the original proceedings and it was not necessary to readdress them or to address them further.[11]

---

"(2) Allege:

"(a) The facts and circumstances which have arisen after the hearing or order which justify the reversal or modification; or

"(b) The consequences resulting from compliance with the decision, order, or requirement which justify or entitle the applicant to the reversal or modification."

11. Specifically, Order No. 78617 stated: "Further, the avian impact, which Friends states is its primary concern . . ., was thoroughly consid-

Thereafter, as we have seen, Tribbey, on his own behalf, and not on behalf of Friends, filed a petition for judicial review of the Commission's Order No. 78617, and, on the same day, a separate petition for judicial review of the Commission's Order was filed by the respondents Sprenger, Bounds, and Gnegy. The actions having been consolidated, the petitioners each filed a motion to dismiss the petitions as untimely. Before the Circuit Court, the respondents did not contend that they were "parties" to the proceeding, just that they were "persons in interest." [12] Tribbey argued, in addition, that although Friends was not a "party in interest," its application for rehearing tolled the time for filing a petition for judicial review.

The Circuit Court dismissed both actions, ruling that none of the respondents had filed a timely request for rehearing and that their petitions for judicial review were similarly untimely. It explained:

"The [respondents] in these cases concede that judicial review is sought only under Section 3–202 of the Public

---

ered during the proceeding and was satisfactorily addressed in the settlement." Moreover, in respect to the requirement that the certificate of public convenience and necessity be postponed pending additional attention being given to "siting plans," the order stated that:

"The settlement in this case already provides for the consideration of new data points over a chosen interval of time, since it includes provisions for objective, three-year post-construction studies of bird mortality, a requirement and study period that satisfied the settling parties concerned about bird safety. (Condition 17.) As a part of the approved settlement agreement, bird safety advocates will participate in the selection of the independent consultant that will conduct the three-year study. (Condition 17.) The settlement also contains provisions authorizing DNR to make determinations of excessive avian mortality, and to require that a plan for reducing mortality be prepared by Clipper Windpower, Inc. (Condition 18.) Additionally, as a part of the settlement, restrictions designed to mitigate the risk of avian harm have been placed upon the lighting of the wind turbines. (Condition 16.)"

12. Specifically, the court asked respondents' counsel, "You're not claiming that either of the [respondents] here was a party to the proceedings?" To which respondents' counsel replied, "No, I'm not." Respondents claimed that they were "persons in interest."

Utility Compan[ies] Article. Under that section a 'party or person in interest' may seek judicial review of a decision or order of the Commission. This court assumes without deciding that the [respondents] are 'persons in interest.'

"The issue then is whether the petitions for judicial review were timely. Pursuant to Maryland Rule 7–203(a)(1), the petitions had to be filed within 30 days after the date of the order or action for which review is sought. I believe that was March 26th, 2003. In these cases the petitions were not filed until some five months later. So, unless the time for filing was stayed, the petitions were untimely.

"Neither of the [respondents] filed a timely request for re-hearing before the Commissioner. Mr. Sprenger filed a request, but it was not timely. Even if it had been timely, however, the statute restricts petitions for rehearing before the Commission to parties in interest. That is the plain language of Section 3–114(c). Accordingly, the time for the [respondents] to seek judicial review pursuant to 3–202, was 30 days from March 26th, 2003. That date was not met.

"The [respondents'] attempt to, what I would call, piggyback on the arguably timely filings of others to stay a deadline is of no avail. First, there is no legal support under the Public Utility Compan[ies] A[rticle] for the [respondents'] position that the timely filing of a petition for re-hearing by one party stays the time for filing judicial review by another. Moreover, none of the entities that filed a request for re-hearing were parties in interest, so the [respondents'] attempts at re-hearing were— I'm sorry. Those parties' attempts, those entities' attempts at re-hearing were like the [respondents'] a nullity."

Although Friends' request for rehearing may have been timely filed, its request was invalid because Friends was not a "party in interest" and, thus, was not entitled to a rehearing under PUC § 3–114.

Thereafter, the respondents appealed to the Court of Special Appeals, which, in an unreported opinion, reversed the judgment of the Circuit Court. In holding that the judicial

review action should not have been dismissed as untimely, the intermediate appellate court reasoned:

"As stated above, § 3–114 provides a 'party in interest' with the right to apply for a rehearing. We are persuaded that this term was placed into the statute in order to reduce the number of requests for rehearing that the Commission must deal with. The Court of Appeals has made it clear that 'one may become a party to an administrative proceeding rather easily.' *Dorsey v. Bethel A.M.E.*, 375 Md. 59, 72[, 825 A.2d 388, 395] (2003) (quoting *Sugarloaf v. Department of Environment*, 344 Md. 271, 286[, 686 A.2d 605, 613] (1996)). We conclude that a person who has become a 'party' to a Commission proceeding is not entitled to apply for a rehearing unless the order entered as a result of that proceeding has 'personally and specifically affected [him or her] in a way different from ... the public generally.' *Sugarloaf v. Dept. of Environment*, 344 Md. 271, 288[, 686 A.2d 605, 614] (1996) (quoting *DuBay v. Crane*, 240 Md. 180, 185[, 213 A.2d 487, 489–90] (1965)). As an 'adjoining landowner,' Mr. Tribbey was a 'party in interest' to the Commission proceeding because (1) his participation in the proceeding made him a 'party,' and (2) as an 'adjoining landowner' to the property where the turbines will be placed, the Commission's order has personally and specifically affected him in a way different from the way that order affects the general public." [13]

and that Tribbey's request for rehearing was made "*in both his individual capacity and in his capacity as a representative* of Friends of Backbone Mountain." The court concluded that "it would be exalting form over substance to hypothesize that Mr. Tribbey made the request for a rehearing 'solely' as a representative of the Friends of Backbone Mountain." On this premise, the court held that, "as a result of the timely

---

**13.** The court then held that Mr. Sprenger was not a "party in interest" to the proceeding because he was not a "party" to the proceeding. Moreover, none of the respondents would be a "party in interest" "because none was personally and specifically affected in a way different from the public generally."

request for rehearing filed by Mr. Tribbey, all of the appellants had 30 days from August 8, 2003 to file their actions for judicial review of the Commission's March 26, 2003 order."

## II.

We review, in this case, a decision by the Commission, an administrative agency.[14] Though couched in terms of a formal judicial review, we do not even actually reach that stage of the proceedings. Petitions for judicial review were filed by the respondents, but only after the Commission had denied Friends' application for rehearing. It is the denial of that application, encapsulated in Order No. 78617, upon which the resolution of this case primarily rests.

Our scope of judicial review of an action by the Public Service Commission is dictated by PUC § 3–203.[15] Moreover, we shall not overturn a factual decision by the Public Service Commission unless it proves to be unlawful or unreasonable. *Town of Easton v. Public Service Comm'n of Maryland,* 838 A.2d 1225, 379 Md. 21 (2003); *Office of Peo-*

---

**14.** Although the Commission is a state administrative agency, it is not subject to the "Contested Cases" subtitle of the State Administrative Procedure Act. Maryland Code (1984, 2004 Repl. Vol.) § 10–203(a)(3)(vi) of the State Government Article. Consequently, a certain amount of specialized jurisprudence has evolved concerning matters before the Commission, due also to the unique statutory provisions in the PUC. One must be wary, therefore, in the too quick application of case law that has grown from the interpretation and application of the State Administrative Procedure Act. *See infra* at 558–62, 924 A.2d at 1171–73.

**15.** Maryland Code (1998), § 3–203 of the Public Utility Companies Article, governing rehearings, provides:

"Every final decision, order, or regulation of the Commission is prima facie correct and shall be affirmed unless clearly shown to be:

"(1) unconstitutional;

"(2) outside the statutory authority or jurisdiction of the Commission;

"(3) made on unlawful procedure;

"(4) arbitrary or capricious;

"(5) affected by other error of law; or

"(6) if the subject of review is an order entered in a contested proceeding after a hearing, unsupported by substantial evidence on the record considered as a whole."

*ple's Counsel v. Maryland Public Service Comm'n,* 733 A.2d 996, 355 Md. 1 (1999). Our review in the instant case is of the Commission's interpretation and application of provisions of the Public Utility Companies Article; thus, our review is *de novo.*

## III.

The outcome of this case essentially hinges on the timeliness of the respondents' petitions for judicial review. That, in turn, depends on whether the respondents were "parties" or persons entitled to seek rehearing and, if so, whether they timely applied for that rehearing. We hold that the respondents were not parties entitled to seek rehearing and, therefore, they did not timely apply for rehearing. It follows, as well, that they did not petition for judicial review timely. We shall reverse the judgment of the Court of Special Appeals.

In addressing the issues this case presents, we are required to construe various provisions of the Public Utility Companies Article. The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Centre Ins. Co. v. J.T.W.,* 397 Md. 71, 79, 916 A.2d 235, 239 (2007); *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006). Statutory interpretation begins with the plain language of the statute. *Id.* "[A]nd ordinary, popular understanding of the English language dictates interpretation of its terminology." *Chow,* 393 Md. at 443, 903 A.2d at 395 (quoting *Kushell v. Dep't of Natural Resources,* 385 Md. 563, 576, 870 A.2d 186, 193 (2005) (citing *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004))); *see Centre Ins.,* 397 Md. at 79, 916 A.2d at 239. We stated in *Kushell* that:

"In construing the plain language, '[a] court may neither add nor delete language so as to reflect an intent not evidenced by the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.'" *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003); *County Council v. Dutcher,* 365 Md. 399, 416–417, 780 A.2d 1137, 1147 (2001). Statutory text " 'should be read so that

no word, clause, sentence or phrase is rendered superfluous or nugatory.'" *Collins [v. State]*, 383 Md. [684,] 691, 861 A.2d [727,] 732 (quoting *James v. Butler*, 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003)). The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect. *Deville*, 383 Md. at 223, 858 A.2d at 487; *Navarro–Monzo v. Washington Adventist*, 380 Md. 195, 204, 844 A.2d 406, 411 (2004).

"If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. *Collins*, 383 Md. at 688–89, 861 A.2d at 730. 'If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for "the Legislature is presumed to have meant what it said and said what it meant." '" *Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002))."

*Kushell*, 385 Md. at 576–77, 870 A.2d at 193–94. *See Centre Ins.*, 397 Md. at 79–80, 916 A.2d at 240; *Chow*, 393 Md. at 443–44, 903 A.2d at 395.

The Public Utility Companies Article prescribes the procedures and the requirements for a person or entity to participate in proceedings before the Commission. PUC § 3–114 provides for the rehearing of a final order issued by the Commission. It states that "[a] *party in interest* may apply to the Commission for rehearing within 30 days after service of a final order on the party." PUC § 3–114(c) (emphasis added). Inherent in the language of this provision is that one must be a "party" to the proceeding in order to be able to apply for rehearing. An entity must be a "*party* in interest" and may apply "within 30 days after service of a final order on the *party*." PUC § 3–114(c) (emphasis added). PUC § 3–106 prescribes the method by which a person may become a

"party." "If a person *timely* files, the person *may apply to intervene* in a proceeding before the Commission." PUC § 3–106(a) (emphasis added). Furthermore, "[a]n intervenor has all the rights of a *party* to a proceeding." PUC § 3–106(c) (emphasis added).

PUC § 3–202 addresses judicial review of decisions and orders of the Commission. It states, in pertinent part: "Except for the staff of the Commission, a *party or person in interest* ... that is dissatisfied by a final decision or order of the Commission may seek judicial review of the decision or order as provided in this subtitle." PUC § 3–202(a) (emphasis added). Maryland Rule 7–203 [16] provides that:

> "Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:
>
> "(1) the date of the order or action of which review is sought;
>
> "(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner, or
>
> "(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner."

Thus, for a petition for judicial review of an order issued by the Commission to be timely, it must be filed by a "party or person in interest" within 30 days of the date of the final decision or order. In the case *sub judice,* that order was Order No. 78354, issued on March 26, 2003, which granted Clipper permission to build the wind turbine facility. Therefore, for the petitions in this case to have been timely filed, they would have had to have been filed by April 25, 2003.

█ Applying for rehearing under PUC § 3–114(c) is separate and distinct from seeking judicial review under PUC § 3–

---

16. Judicial review of actions of the Commission is governed by the Maryland Rules regulating administrative agency action review by the courts. *Renehan v. Public Serv. Comm'n,* 231 Md. 59, 188 A.2d 566 (1963).

202(a). To apply for rehearing, an entity must be a "party in interest," PUC § 3–114(c), whereas, either a "party *or person in interest*" may seek judicial review of a final order under PUC § 3–202(a). (Emphasis added). The respondents contend that a "person in interest" is the same as a "party in interest." We do not agree and believe, in fact, that this is clearly not the case. The language in all of the relevant sections of the Public Utility Companies Article is unambiguous. Construing "party in interest" and "person in interest" as having the same meaning renders one or the other superfluous or nugatory. *See Chow,* 393 Md. at 443, 903 A.2d at 395 (holding that when analyzing a statute, we look at the statutory scheme as a whole and harmonize the provisions so that each may be given effect.); *Kushell,* 385 Md. at 577, 870 A.2d at 193 (holding that "[s]tatutory text ' "should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory." ' ") (citing *Collins,* 383 Md. at 691, 861 A.2d at 732 (quoting *Butler,* 378 Md. at 696, 838 A.2d at 1187)). The respondents in addition assert that the legislative history of the Public Utility Companies Article lends credence to their argument. We need not, however, look beyond the plain and unambiguous language of the statute as written. *Kushell,* 385 Md. at 577, 870 A.2d at 194 (citing *Collins,* 383 Md. at 688–89, 861 A.2d at 730). We are satisfied that the current version is plainly and unambiguously written. Thus, we shall not delve into an analysis and interpretation of the prior versions of the Public Utility Companies Article, which the Legislature has amended and repealed over the years.

### A.

The Commission's initial Order No. 78354 was issued on March 26, 2003. Friends applied, through Tribbey, for rehearing on April 24, 2003. The application was made within 30 days, as required by PUC § 3–114(c). Because, as indicated, Friends never intervened,[17] and, so, never became a party

---

17. Apparently, Friends did file an application to intervene on June 27, 2003. That application, however, was filed well after the proceedings

pursuant to PUC § 3–106, its application for rehearing was neither effective nor proper, as only a "party in interest" may apply to the Commission for rehearing.

■ The Commission, in its August 8, 2003, Order No. 78617, denied Friends' request for rehearing. The Commission correctly interpreted PUC § 3–114(c)(1) as "restrict[ing] the right to apply for rehearing to parties . . . ." The order further stated that, "Since none of the . . . entities requesting rehearing were parties to the proceeding, none qualify to request rehearing." The Circuit Court concurred with this finding, stating that "none of the entities that filed a request for re-hearing were parties in interest." We agree with the Commission and Circuit Court.

An entity must be a "*party* in interest" in order to be entitled to apply for rehearing. PUC § 3–114(c)(1) (emphasis added). To be a "party in interest," the entity must first have acquired the status of "party" by having timely sought, and been granted, the right to intervene. PUC § 3–106(a). A "party in interest," in context and as used in PUC § 3–114(c)(1), actually is a more restrictive term than "party." The Court of Special Appeals held that Friends was not a party in interest because it "was [not] personally and specifically affected in a way different from the public generally." Under the circumstances of this case, as we explain *infra*, that was the wrong standard.

Friends was never a party to the proceedings. It simply never sought to intervene in a timely manner. That should have concluded the matter. The intermediate appellate court nevertheless determined that the respondent Tribbey, although purporting to act on behalf of Friends as the organization's representative, also, and at the same time, *personally* filed for rehearing. The court stated that the request for rehearing was made "*in both* his individual capacity *and* in his capacity as a representative of Friends." Thus, despite the

---

before the Commission had closed and the final order had been issued on March 26, 2003. It was not timely. PUC § 3–106.

absence of any indication that Tribbey intended that result, that court, refusing to "exalt[ ] form over substance to hypothesize that Mr. Tribbey made the request for a rehearing 'solely' as a representative of the Friends of Backbone Mountain," attributed the "timeliness" of Friends' application—which the court had determined did not itself satisfy the requirements of PUC § 3–114—to Tribbey, which it also recognized to be filing in his individual capacity. It followed from this interpretation that Tribbey had timely requested rehearing and, because he had, all of the respondents were beneficiaries; they "had 30 days from August 8, 2003 to file their actions for judicial review of the Commission's March 26, 2003 order." We do not agree with this analysis.

The decision of the Court of Special Appeals rested on two points: (1) that Tribbey, acting on behalf of Friends as its representative, was also personally applying for rehearing, and (2) that Tribbey himself was a "party in interest." Whether Tribbey's actions as a representative of Friends also qualify as his personal application for rehearing is a matter that we need not and do not reach. Tribbey simply was not a party in interest under PUC § 3–114(c). He did not intervene and, consequently, never became a "party." Therefore, whether he timely filed for rehearing is irrelevant.

The Court of Special Appeals' determination that Tribbey was a party in interest was premised on his being an "adjoining landowner," to the property where the turbines will be placed and "his participation in the proceeding." The latter, it said,

> "made him a 'party,' and ... as an 'adjoining landowner' to the property where the turbines will be placed, the Commission's order has personally and specifically affected him in a way different from the way that order affects the general public."

The intermediate appellate court relied on our cases, *see, e.g., Dorsey v. Bethel A.M.E.*, 375 Md. 59, 72, 825 A.2d 388, 395 (2003) (quoting *Sugarloaf v. Department of Environment*, 344 Md. 271, 286, 686 A.2d 605, 613 (1996)), *DuBay v. Crane*,

240 Md. 180, 184, 213 A.2d 487, 489 (1965), which it construes as "ma[king] it clear that 'one may become a party to an administrative proceeding rather easily.' "

In *Sugarloaf,* an action before the Maryland Department of the Environment, we addressed the distinction between the standing necessary to be a party to an administrative proceeding and the standing necessary to petition for judicial review of an administrative decision. 344 Md. at 285–86, 686 A.2d at 613 ("The cases in this Court, and the language of the Administrative Procedure Act itself, § 10–222(a)(1) of the State Government Article, recognize a distinction between standing to be a party to an administrative proceeding and standing to bring an action in court for judicial review of an administrative decision."). We held that "a person may properly be a party at an agency hearing under Maryland's 'relatively lenient standards' for administrative standing but may not have standing in court to challenge an adverse agency decision." *Id.* (citing *Maryland–Nat'l v. Smith,* 333 Md. 3, 11, 633 A.2d 855, 859 (1993); *see Medical Waste v. Maryland Waste,* 327 Md. 596, 611–614, 612 A.2d 241, 248–50 (1992)). The *Sugarloaf* Court relevantly stated that: "The requirements for administrative standing under Maryland law are not very strict." [18] *Sugarloaf* 344 Md. at 286, 686 A.2d at 613.

---

**18.** It should be noted that *Sugarloaf v. Department of Environment,* 344 Md. 271, 686 A.2d 605 (1996), *Dorsey v. Bethel A.M.E.,* 375 Md. 59, 825 A.2d 388 (2003), and *DuBay v. Crane,* 240 Md. 180, 213 A.2d 487 (1965), the cases relied upon by the Court of Special Appeals, dealt with administrative actions in the context of the Administrative Procedure Act (APA), as codified in Maryland Code, Title 10 of the State Government Article. As Maryland Code (1984, 2004 Repl. Vol.), § 10–203(a)(3)(vi) of the State Government Article makes clear, the APA does not apply to the Public Service Commission. We discussed this issue in *Mid–Atlantic Power Supply Association v. Public Service Commission,* 361 Md. 196, 760 A.2d 1087 (2000):

"[T]he Public Service Commission and its proceedings have been exempted from the requirements of the APA, including the provision governing judicial review. This exclusion is indicative of an intention on the part of the Legislature to continue the applicability of the unique provisions to which the Public Service Commission is subject, separate from those applicable to agencies to which the APA applies. *See* State Government Article § 10–203(3)(vi). Had the Legislature

*See Dorsey v. Bethel A.M.E.,* 375 Md. 59, 72, 825 A.2d 388, 395 (2003). This is the language that the Court of Special Appeals found compelling. Immediately following that statement, however, we qualified it: *"Absent a statute or a reasonable regulation specifying criteria for administrative standing,* one may become a party to an administrative proceeding rather easily." *Sugarloaf,* 344 Md. at 286, 686 A.2d at 613 (emphasis added); *Dorsey,* 375 Md. at 72, 825 A.2d at 395.

The limiting language used by this Court in *Sugarloaf,* "Absent a statute ... specifying criteria for administrative standing," 344 Md. at 286, 686 A.2d at 613, is important and may not be disregarded. Indeed, its significance was underscored and confirmed when, in *Sugarloaf,* we also said:

" 'Bearing in mind that the format for proceedings before administrative agencies is intentionally designed to be informal so as to encourage citizen participation, we think that *absent a reasonable agency or other regulation providing for a more formal method of becoming a party,* anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter being considered by that agency, thereby becomes a party to the proceedings.' "

344 Md. at 286–87, 686 A.2d at 613 (quoting *Morris v. Howard Res. & Dev. Corp.,* 278 Md. 417, 423, 365 A.2d 34, 37 (1976)) (emphasis added). Finally, in stating its decision, the *Sugarloaf* Court explained, "[i]f there were a statutory provision or a regulation setting forth criteria for administrative standing, the Secretary's request would have been appropriate." 344 Md. at 288, 686 A.2d at 614. In the case *sub judice,* PUC § 3–106 creates just that type of statutorily provided criteria for becoming a party to an administrative action before the

---

intended that the standard for judicial review of Public Service Commission proceedings be the same as that prescribed for contested cases under the APA, it is inconceivable that it would have excluded the Public Service Commission from the APA ...."

361 Md. at 214, 760 A.2d at 1096–97 (footnote omitted). In any event, the Court of Special Appeals, in the case *sub judice,* did not correctly interpret *Sugarloaf.*

Commission. Therefore, the present factual situation is clearly distinguishable from *Sugarloaf.*

We interpreted PUC § 3–106 in *Mid–Atlantic Power Supply Association v. Public Service Commission,* 361 Md. 196, 760 A.2d 1087 (2000). There, we stated:

> "The appellant was, as we have seen and the parties to these proceedings also agree, a party before the PSC. *Because it moved, and was allowed, to intervene,* Maryland Code (1998) § 3–106 of the Public Utility Companies Article, governing intervention in Commission proceedings, is implicated. Because § 3–106 defines the meaning of 'party,' as used in § 3–202(a), it and § 3–202(a) must be read together. Section 3–106 provides that a person shall be permitted to intervene if the person makes timely application and the Commission concludes that the interests of that person are not being adequately represented and that the issue or issues the person seeks to raise are neither irrelevant nor immaterial. *Thus, to become a party to a proceeding before the Commission, a party must have been determined, by the Commission, to have an interest in the proceeding that is not being adequately represented and that interest, in turn, has been determined not to be frivolous or of no consequence to the proceeding.*[19] Once intervention has been granted, the person has all the rights of a party to the proceeding."

361 Md. at 205–06, 760 A.2d at 1092 (emphasis added). So, not only does an entity have timely to apply to intervene as a

---

**19.** In *Mid–Atlantic,* 361 Md. 196, 205–06 n. 6, 760 A.2d 1087, 1092 n. 6 (2000), we stated:

> "The appellees state that 'the requirements for participating as a "party" at the administrative level are not very strict,' a position, they suggest, with which the Commission agreed, as demonstrated by its order, stating that 'all entities that requested leave to intervene in these consolidated proceedings were granted party status.' Contrary to the position of the appellees and apparently the Commission, *the intervention statute seems to require more than a perfunctory review,* which perhaps was not done, but with which the Commission is charged nonetheless."

(Emphasis added).

party, but it is for the Commission to determine whether to grant leave for that entity to intervene. PUC § 3–106(b) states that: "The Commission shall grant leave to intervene unless the Commission concludes that: (1) the parties to the proceeding adequately represent the interest of the person seeking to intervene; or (2) the issues that the person seeks to raise are irrelevant or immaterial."

Therefore, while generally it may be rather easy to become a party to many administrative proceedings regulated by the State Administrative Procedure Act, in the case of actions before the Public Service Commission, one must comply with PUC § 3–106. That compliance requires, at a minimum, the timely filing of an application to intervene in a proceeding before the Commission in order to become a "party." PUC § 3–106(a). The facts of the instant case show that neither Friends nor Tribbey timely filed an application to intervene. Friends filed to intervene on June 27, 2003, after it had attempted to apply for rehearing and well after it would have been timely to intervene (i.e., prior to the close of proceedings). Failing timely to intervene, Friends was not a party, and, therefore, not a "party in interest," when it filed for rehearing on April 24, 2003. Thus, the Commission's denial of Friends' application for rehearing was appropriate. Similarly, Tribbey *never* filed to intervene in his own right and, thus, also never became a party or "party in interest." [20] As a result, even if we were to consider Tribbey's representation of Friends to satisfy somehow his own personal filing for rehearing, he still would not have properly filed, as he never intervened to become a party.

Because of our determination that neither Friends nor Tribbey was a "party" to the proceeding, [21] neither of them

---

**20.** The fact that Tribbey was an adjoining landowner and was present at the adjudicatory hearing in January of 2003, does not, in and of itself, make him a "party." In order to have become a "party" Tribbey would have had to apply to intervene, pursuant to PUC § 3–106. It is evident that he did not.

**21.** The respondents expressly acknowledge that they were not parties: "Your Appellees [Respondents] have candidly acknowledged that they

was, or could have been, a "party in interest" to the proceeding so as to be entitled to apply for rehearing under PUC § 3–114(c). Therefore, there was no proper, timely application for rehearing filed in the present case.

### B.

The Court of Special Appeals' concluded that, "as a result of the timely request for rehearing filed by Mr. Tribbey, all of the [respondents] had 30 days from August 8, 2003 to file their actions for judicial review of the Commission's March 26, 2003 order." The court recognized that the respondents, other than Tribbey,[22] were not parties or parties in interest to the proceeding, stating: "We therefore hold that (1) Mr. Sprenger was not a 'party in interest' to the Commission proceeding because he was never a 'party' to that proceeding, and (2) none of the four entities that requested a hearing was a 'party in interest' because none was personally and specifically affected in a way different from the public generally."[23]  Furthermore, the intermediate appellate court concluded: "For these reasons, the actions for judicial review were untimely *unless* Mr. Tribbey's request for a rehearing was presented in his individual capacity rather than in his capacity as a representative of an entity that does not qualify as a 'party in interest.'"

As discussed above, Tribbey did not timely or properly apply for rehearing because he was not himself a "party" or "party in interest." Therefore, the Court of Special Appeals' erred in its determination as to the respondents' petitions for judicial review. The respondents did not have "30 days from August 8, 2003 to file their actions for judicial review of the

were denied admission as intervenors. They were not 'parties to the hearing'. We do not claim that they were accepted as parties to the proceeding."

22. This could only be Sprenger, Bounds, and Gnegy. Sprenger filed an application to intervene on August 5, 2003, which was not timely.

23. As stated *supra,* this is the wrong standard in actions before the PSC.

Commission's March 26, 2003 order." [24]   Rather, they had 30 days from March 26, 2003.

■ PUC § 3–202(a) provides that a "party or *person in interest*" may seek judicial review of a decision or order of the Commission. A "person in interest" is, by its very terminology, different from a party or a "party in interest". Thus, the respondents, as adjoining landowners to the property where the wind turbine facility will be constructed could possibly be "persons in interest" entitled to seek judicial review of the Commission's March 26, 2003, Order No. 78354.[25]   In order to seek that judicial review, however, Maryland Rule 7–203(a) requires that a petition be filed within 30 days after the order is issued;  that would have been April 25, 2003 in the case at bar. None of the respondents [26] filed a petition for judicial review within that time period and, hence, their petitions for judicial review, not being timely, were properly denied.

## IV.

For the aforementioned reasons we reverse the judgment of the Court of Special Appeals. The respondents failed timely to apply to intervene as parties, PUC § 3–106, before the

24. The respondents also argue that Friends' application for rehearing stayed the time for filing a petition for judicial review for all entities until the Commission had made its ruling on August 8, 2003. Maryland Code (1998), § 3–204(c) of the Public Utility Companies Article provides: "If a rehearing by the Commission is applied for, a proceeding for judicial review may be filed after service of the decision of the Commission that denies the rehearing." This may be true when a *proper* application (by an entity who has sought and has been permitted to intervene as a party) for rehearing is timely filed. In the instant case, however, as discussed *supra,* there was no timely application by a "party" or "party in interest" for rehearing. Thus, the time for filing a petition for judicial review was not stayed.

25. We need not, and do not, determine at this time whether respondents are or were "persons in interest." Even if respondents were actually "persons in interest" they did not timely file petitions for judicial review.

26. It is also clearly evident that Friends *never* filed a petition for judicial review.

Commission and, therefore, the pertinent applications for re-hearing were not properly submitted by "parties in interest." PUC § 3–114(c). As a result, there was no timely application for rehearing. PUC § 3–114(c). Consequently, the time for filing a petition for judicial review of Order No. 78354 was not stayed by Friends' application. The final order was issued on March 26, 2003, and any petition for judicial review had to be filed within 30 days of that date. There was no timely petition for judicial review filed in the instant case. The decisions of the Commission and the trial court were correct.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPE-CIAL APPEALS TO BE PAID BY THE RESPONDENTS.